STEVEN J. ROTHANS – State Bar No. 106579
JILL WILLIAMS – State Bar No. 221793
SCOTT CARPENTER – State Bar No. 253339
CARPENTER, ROTHANS & DUMONT
500 South Grand Avenue, 19th Floor
Los Angeles, California 90071
(213) 228-0400 / (213) 228-0401 (Fax)
jwilliams@crdlaw.com | scarpenter@crdlaw.com

MICHELE BEAL BAGNERIS, City Attorney
State Bar No. 115423
JAVAN N. RAD, Chief Assistant City Attorney
State Bar No. 209722
100 N. Garfield Avenue, Suite N-210
Pasadena, CA 91109
(626) 744-4141 / (626) 744-4190 (Fax)
mbagneris@cityofpasadena.net | jrad@cityofpasadena.net

Attorneys for Defendants, City of Pasadena,
Chief Phillip Sanchez and Officers Aaron Villacana,
Thomas Butler, Robert Griffith, Michael Orosco,
Phillip Poirier, and Raphael Santiago

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHANE LOVE,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>CITY OF PASADENA, a municipal entity; PHILLIP SANCHEZ; AARON VILLACANA, THOMAS BUTLER, ROBERT GRIFFITH, MICHAEL OROSCO, PHILLIP POIRIER, RAFAEL SANTIAGO; and DOES 1-10 inclusive,<br><br>　　　　Defendants. | Case No.: 2:20-cv-06557-PA-SPx<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Fed. R. Civ. P., 12(b)(6)]<br><br>DATE:　November 20, 2023<br>TIME:　1:30 p.m.<br>COURTROOM: 9A |

PLEASE TAKE NOTICE that on November 20, 2023, at 1:30 p.m., or as soon thereafter as counsel may be heard in Courtroom "9A" of the United States District Court, Central District, located at 350 W. 1st Street, Los Angeles,

- 1 -

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

California 90012, Defendants, City of Pasadena, Chief Phillip Sanchez and Officers Aaron Villicana, Robert Griffith, Michael Orosco, Thomas Butler, Phillip Poirier, and Raphael Santiago, will and hereby do move this Court for an Order dismissing the plaintiff's First Amended Complaint for Damages ("FAC").

This motion is made on the grounds that the FAC fails to allege that plaintiff is entitled to bring a loss of familial relationship claim under the Fourteenth Amendment related to the death of decedent where no biological or legal relationship existed.

This motion was filed following meet and confer efforts, pursuant to Central District Local Rule 7-3, that took place on October 9, 2023.

This motion will be made and based on this Notice of Motion, the Memorandum of Points and Authorities, the pleadings and records on file with this Court, any evidence of which this Honorable Court may further take judicial notice prior to or at the hearing of this matter, and upon such oral or documentary evidence as may be presented at the hearing of this motion.

DATED:  October 16, 2023        CARPENTER, ROTHANS & DUMONT

                                         */s/ Scott J. Carpenter*
                             By: _____
                                STEVEN J. ROTHANS
                                JILL WILLIAMS
                                SCOTT J. CARPENTER
                                Attorneys for Defendants

# **TABLE OF CONTENTS**

I.  INTRODUCTION ....................................................................................................1

II. PROCEDURAL HISTORY ...................................................................................1

III. FACTUAL SUMMARY .........................................................................................2

IV. LEGAL STANDARD ON MOTION TO DISMISS .............................................3

V.  PLAINTIFF IS NOT ENTITLED TO BRING A FOURTEENTH AMENDMENT CLAIM RELATED TO DECEDENT'S DEATH......................4

VI. CONCLUSION ......................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

A.G. v. County of Los Angeles, 28 Cal. App. 5th 373 (2018)..................................12

Albright v. Oliver, 510 U.S. 266 (1994)....................................................................4

Ashcroft v. Iqbal (Iqbal), 556 U.S. 662 (2009) .....................................................3, 4

Backlund v. Barnhart, 778 F.2d 1386 (9th Cir. 1985)..............................................7

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).................................................3, 4

Berg v. Popham, 412 F.3d 1122 (9th Cir. 2005) ......................................................4

Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806 (9th Cir. 2010).........3

Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969 (9th Cir. 2004)..............................4

Cook v. Brewer, 637 F.3d 1002 (9th Cir. 2011) .......................................................3

Elisa B. v. Superior Court, 37 Cal. 4th 108 (2005) ................................................12

Erickson v. Pardus, 551 U.S. 89 (2007) ...................................................................4

In re Gilead Sciences Sec. Litig., 536 F.3d 1049 (9th Cir. 2008) ...........................11

Jenkins v. McKeithen, 395 U.S. 411 (1969) .............................................................4

Lehr v. Robertson, 463 U.S. 248 (1983) ....................................................5, 6, 7, 13

Love v. Villacana, 2020 WL 5815920 (C.D. Cal. Aug. 27, 2020) ...........................2

Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097 (9th Cir. 2008)...............4

Michael H. v. Gerald D., 491 U.S. 110 (1989).........................................................5

Miller v. California, 355 F.3d 1172 (9th Cir. 2004).................................................7

Olvera v. Cnty. of Sacramento, 932 F.Supp.2d 1123 (E.D. Cal. Mar. 19, 2013) .....4

Osborne v. Cnty. of Riverside, 385 F. Supp. 2d 1048 (C.D. Cal. 2005)...................7

Prince v. Massachusetts, 321 U.S. 158 (1944).........................................................5

S.Y. v. S.B., 201 Cal. App. 4th 1023 (2011)............................................................12

Santosky v. Kramer, 455 U.S. 745 (1982) ............................................................4, 5

Smith v. Org. of Foster Families for Equal. & Reform, 431 U.S. 816 (1977)..........5

Terry v. City of Pasadena, 2019 WL 2895192 (C.D. Cal. Apr. 22, 2019).............10

Terry v. City of Pasadena, 2019 WL 4139257 (C.D. Cal. June 17, 2019)........10, 11

Ward v. City of San Jose, 967 F.2d 280 (9th Cir. 1991)...........................................7

Wheeler v. City of Santa Clara, 894 F.3d 1046 (9th Cir. 2018) .......................4, 8, 9

**Statutes**

Cal. Fam. Code § 7611(d)..................................................................................11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This action relates to a September 30, 2016 use-of-force incident involving Pasadena police officers and decedent Reginald Thomas. Plaintiff, Shane Love, claims he is a non-biological "child" of Thomas, and brings a substantive due process claim related to Thomas's death under 42 U.S.C. § 1983 and the Fourteenth Amendment.

Defendants move to dismiss on the grounds that the First Amended Complaint ("FAC") fails to allege a constitutionally protected relationship between plaintiff and decedent. No biological or legal relationship existed between the two. And the allegations in the FAC are insufficient to establish that decedent had a custodial relationship with plaintiff and that Thomas should be presumed as the "natural" father of plaintiff under California law.

## II. PROCEDURAL HISTORY

This action is the third suit filed related to the death of Reginald Thomas and is the second action filed by Mr. Love. The initial wrongful death lawsuit was entitled <u>Shainie Lindsey, et al. v. City of Pasadena, et al.</u>, Central District case number 2:16-08602-SJO-RAO (hereinafter "the *Lindsey Action*"). The *Lindsey Action* was brought in November 2016 by three guardians ad litem, including plaintiff's biological mother, Shainie Lindsey, who represented (what were believed to be) all known heirs of Thomas. The *Lindsey Action* was settled, and the lawsuit was dismissed with prejudice.

The second lawsuit, and plaintiff's first attempt to seek redress related to the incident, was brought in Fall 2018 shortly after the *Lindsey Action* settled and was entitled <u>Catrina Terry, et al. v. City of Pasadena, et al.</u>, Central District case number 2:18-cv-07730-SJO-RAO (hereinafter "the *Terry Action*"). In addition to plaintiff, minor "J.H." was also named as another alleged heir of decedent. Plaintiffs in the *Terry Action* asserted claims pursuant to 42 U.S.C. § 1983 for

- 1 -
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  violation of rights under the Fourteenth Amendment and Monell.  After motions
2  to dismiss, U.S. District Judge S. James Otero dismissed plaintiff's action in its
3  entirety with prejudice.
4        Plaintiff then filed the instant action in state court – his second lawsuit
5  arising out of the September 30, 2016 incident.  After the matter was removed,
6  this Court dismissed plaintiff's claims based on res judicata and collateral
7  estoppel.  Love v. Villacana, 2020 WL 5815920, at *5 (C.D. Cal. Aug. 27, 2020).
8        On appeal, the Ninth Circuit held that Judge Otero's prior dismissal was
9  jurisdictional, and thus defendants had waived any preclusion defense when
10 removing this case to federal court.  Love v. Villacana, 73 F.4th 751, 756 (9th
11 Cir. 2023).  The Ninth Circuit remanded for this Court to determine "whether
12 Love adequately states a claim."  Id. at 757.  Plaintiff then filed a First Amended
13 Complaint on September 25, 2023, and this motion follows.
14 **III.   FACTUAL SUMMARY**
15       Plaintiff alleges that, on September 30, 2016, Thomas was suffering from a
16 mental health episode at an apartment that plaintiff, his mother, and siblings
17 shared with Thomas.  Id. at ¶¶ 30-31.  Pasadena police officers responded to the
18 scene and found Thomas holding a fire extinguisher and a knife under his armpit.
19 Id. at 36.  Officers ordered Thomas to drop the weapons, "but they did not provide
20 [Thomas] the time necessary to understand and comply with their orders."  Id.
21       Thomas was allegedly tased multiple times, which caused him to drop the
22 fire extinguisher and knife.  Id. at ¶¶ 36-37.  Officer Villicana then supposedly
23 began to kick and beat Thomas with a baton.  Id. at ¶ 40.  Officer Villicana
24 allegedly "climbed on top of Mr. Thomas and kneeled on his upper torso,
25 squeezing the air out of Mr. Thomas's lungs."  Id.  Mr. Thomas ultimately died on
26 scene.  Id. At ¶ 45.  Plaintiff states that he "witnessed the killing but was helpless
27 to protect Mr. Thomas from the defendant officers' onslaught."  Id. At ¶ 47.  As a
28 result, plaintiff alleges he "suffered several physical and psychological injuries . .

1 .” Id. At ¶ 50.

2   Plaintiff alleges that decedent Thomas was not a biological parent but his
3 "natural parent" (FAC ¶ 7) who "raised Mr. Love as his son and was the only
4 father who Mr. Love has ever known" (id. at ¶ 2).  Plaintiff claims that decedent
5 "actively participated in Mr. Love's upbringing" (id. at ¶ 3) and "openly held out
6 Mr. Love as his natural child and financially took care of him" (id. at ¶ 79).
7 Decedent also apparently "received Mr. Love into his home" and "Mr. Love lived
8 with Mr. Thomas from the age of one." Id. at ¶ 78.

9   According to the FAC, plaintiff called decedent "Pops", "Dad", and "J.R."
10 Id. at ¶ 23.  Decedent would pay for groceries, meals, clothes and shoes, as well as
11 sometimes take plaintiff to doctor's appointments or to school.  Id. at ¶ 24, 26, 28.
12 Decedent also would cook "all of Mr. Love's meals at home." Id. at ¶ 25.
13 Decedent and plaintiff would "play video games or work out at the gym together."
14 Id. at ¶ 27.  Decedent also taught plaintiff "skills" and "life lessons". Id. at ¶ 29.
15 When plaintiff was young, Thomas taught him to sing the ABCs and to tie a shoe.
16 Id.  When plaintiff got older, Thomas taught plaintiff about girls, how to use a
17 condom, and generally to be a good person and stay out of trouble. Id.

18 **IV.   LEGAL STANDARD ON MOTION TO DISMISS**

19   A motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P.,
20 12(b)(6), should be granted if plaintiff fails to proffer "enough facts to state a
21 claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.
22 544, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Cook v.
23 Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011).  "A claim has facial plausibility
24 when the plaintiff pleads factual content that allows the court to draw the
25 reasonable inference that the defendant is liable for the misconduct alleged."
26 Iqbal, 556 U.S. at 678; see Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty.
27 Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010).  The plaintiff must provide
28 "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.")

In considering whether to dismiss a Complaint, the court must accept the allegations of the complaint as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Albright v. Oliver, 510 U.S. 266, 268 (1994), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Furthermore, conclusory allegations, unsupported by facts, have consistently been rejected as insufficient to state a claim under the Civil Rights Act. See Sherman, 548 F.2d at 1290.

## V. PLAINTIFF IS NOT ENTITLED TO BRING A FOURTEENTH AMENDMENT CLAIM RELATED TO DECEDENT'S DEATH.

Under federal law, there is no dispute that natural parents have a constitutionally protected liberty interest in the care, custody, and management of their children under the Due Process Clause of the Fourteenth Amendment. Santosky v. Kramer, 455 U.S. 745, 752-57 (1982). To find such an interest extant, courts have generally required both a biological or legal relationship, on the one hand, and a custodial relationship, on the other. See Olvera v. Cnty. of Sacramento, 932 F. Supp. 2d 1123, 1141-46 (E.D. Cal. Mar. 19, 2013) (no Fourteenth Amendment claim for unrelated couple who cared for child full-time in their home); Wheeler v. City of Santa Clara, 894 F.3d 1046, 1057 (9th Cir.

2018) ("mere existence of a biological link does not merit equivalent constitutional protection").  And the United States Supreme Court has not found any parental liberty interest in the absence of an adult's preexisting duty of care to a child arising from marriage, blood ties, legal adoption, or guardianship.  <u>See, e.g.</u>, <u>Michael H. v. Gerald D.</u>, 491 U.S. 110, 119-20 (1989); <u>Santosky</u>, 455 U.S. at 747-48; <u>Smith v. Org. of Foster Families for Equal. & Reform</u>, 431 U.S. 816, 846 (1977); <u>Prince v. Massachusetts</u>, 321 U.S. 158, 159-61 (1944).

In <u>Lehr v. Robertson</u>, 463 U.S. 248 (1983), a case involving a natural father's attempt to block his child's adoption by the unwed mother's new husband, the United States Supreme Court emphasized the uniqueness of the biological connection between a parent and child, as well as the importance of the available legal means to preserve those interests.  The Court stated "[t]he significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring."  <u>Id.</u> at 262.  The Court held that the State of New York adequately protected the putative father's inchoate interest in establishing a relationship with his daughter through the provision of laws authorizing formal marriage, through its statutory adoption scheme, and through the putative father registry.  <u>Id.</u> at 263-64.  Because neither the Due Process Clause nor the Equal Protection Clause was found to support the putative father's claims, the Court affirmed the judgment of the New York Court of Appeals.  <u>Id.</u> at 268.

In support of its conclusion, the Court referenced the existence of adoption procedures in the State of New York and the fact that the putative father did not undertake them.  On this point, the Court held:

> The most effective protection of the putative father's opportunity to develop a relationship with his child is provided by the laws that authorize formal marriage and govern its consequences.  But the availability of that protection is, of course, dependent on the

- 5 -
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

will of both parents of the child. Thus, New York has adopted a special statutory scheme to protect the unmarried father's interest in assuming a responsible role in the future of his child.

[…]

After this Court's decision in <u>Stanley</u>, the New York Legislature appointed a special commission to recommend legislation that would accommodate both the interests of biological fathers in their children and the children's interest in prompt and certain adoption procedures … Yet, as all of the New York courts that reviewed this matter observed, the right to receive notice was completely within appellant's control.  <u>Lehr</u>, 463 U.S. at 264.

Importantly, the Court noted the importance of the biological link coupled with a custodial relationship:

When an unwed [biological] father demonstrates a full commitment to the responsibilities of parenthood by "[coming] forward to participate in the rearing of his child," <u>Caban</u>, 441 U.S., at 392, his interest in personal contact with his child acquires substantial protection under the Due Process Clause. At that point it may be said that he "[acts] as a father toward his children." <u>Id.</u>, at 389, n. 7. **But the mere existence of a biological link does not merit equivalent constitutional protection.** The actions of judges neither create nor sever genetic bonds. "[The] importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in '[promoting] a way of life' through the instruction of children … **as well as from the fact of blood relationship**." <u>Smith v. Organization of Foster Families for</u>

     Equality and Reform, 431 U.S. 816, 844 (1977) (quoting
     Wisconsin v. Yoder, 406 U.S. 205, 231-233 (1972)).

Lehr, 463 U.S. at 261 (emphasis added).  Courts since Lehr have confirmed the distinctiveness of the relationship between natural parents and their children.

  In Ward v. City of San Jose, the Ninth Circuit analyzed a situation in which decedent was shot and killed by police officers and explored the viability of a Fourteenth Amendment claim brought under section 1983 by decedent's siblings. 967 F.2d 280, 284 (9th Cir. 1991).  Family members and decedent's estate sued under state law for wrongful death and under federal law pursuant to 42 U.S.C. § 1983.  The jury found liability on the federal claim only.  The district court dismissed decedent's siblings.  The Ninth Circuit affirmed, finding that, for purposes of a substantive due process claim under section 1983, biologically related siblings could not bring a claim for loss of their brother's companionship: "[w]e adopt the earlier and better rule of Bell.  Neither the legislative history nor Supreme Court precedent supports an interest for siblings consonant with that recognized for parents and children." Ward, 967 F.3d at 284.

  In Miller v. California, 355 F.3d 1172 (9th Cir. 2004), the Ninth Circuit held that noncustodial grandparents, who also happened to be "de facto" parents under California law for purposes of juvenile court proceedings, had neither a substantive due process right nor a protected liberty interest in visiting their biological grandchildren, particularly since the children's biological mother opposed such visitation.  Id. at 1175-77; see also Osborne v. Cnty. of Riverside, 385 F. Supp. 2d 1048, 1053–55 (C.D. Cal. 2005) (liberty interest not found for biological grandmother and aunt who failed to allege "a long-standing custodial relationship").

  Similarly, in Backlund v. Barnhart, 778 F.2d 1386 (9th Cir. 1985), the Ninth Circuit held that parents who had fostered a child for about three years lacked any cognizable liberty interest to be free from state interference with their

- 7 -
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

exercise of religious beliefs about discipline. In reaching this conclusion, the court observed that "foster parents do not enjoy the same constitutional protections that natural parents do." Id. at 1389-90.

In Wheeler v. City of Santa Clara, the Ninth Circuit affirmed the grant of a motion to dismiss without leave to amend, holding that a son could not bring certain claims, including one for substantive due process under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, because he had been adopted out and lacked a legal relationship to the decedent. 894 F.3d 1046, 1057 (9th Cir. 2018). Citing the Court's decision in Ward, the Ninth Circuit in Wheeler held:

> Although case law mostly addresses this issue from the perspective of the parent's rights rather than the child's, children's Fourteenth Amendment rights to companionship with their parents have been interpreted as reciprocal to their parents' rights. City of Fontana, 818 F.2d at 1418-19; see also Hayes, 736 F.3d at 1229. **In sum, even biological parents must maintain consistent involvement in a child's life and participation in child-rearing activities for their relationship to be entitled to the Fourteenth Amendment protections at issue here.**
> 
> […]
> 
> Few close relationships - even between blood relatives - can serve as a basis for asserting Fourteenth Amendment loss of companionship claims. [Citation.] Wheeler does not allege that Colbert raised him, otherwise resumed responsibility for his upbringing, or even maintained consistent contact with him during his childhood. See Lehr, 463 U.S. at 261-62 (holding that biological father's failure to have significant custodial, personal, or financial relationship with his daughter and to pursue legal ties to her until she reached age two meant that he was not entitled to

- 8 -
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

full Fourteenth Amendment protection of his relationship with her).

Wheeler, 894 F.3d at 1058 (emphasis added).  The Ninth Circuit and Supreme Court precedent make plain that constitutionally protected parent-child relationships flow from biological or legal entitlement.

In this case, by contrast, plaintiff acknowledges that he is not a biological heir of decedent.  FAC ¶ 7.  Although it is alleged that Thomas "raised" Love since age one and that they lived together most of Love's (id. at ¶ 2), the FAC does not state that Thomas adopted or ever made any attempts to legally formalize a parental relationship with the plaintiff.  Nor are there allegations that Thomas and plaintiff's mother contemplated such legal measures, or that Thomas and Lindsey ever married.  Therefore, there is no asserted biological or legal relationship that enables plaintiff to bring a Fourteenth Amendment claim.

Despite the lack of a biological or legal relationship, plaintiff argues in his FAC that, under Wheeler, "[t]he key fact under the Constitution was Mr. Thomas's 'assumption of parental responsibility . . ." Id. ¶ 80.  But Wheeler does not stand for the proposition that constitutional protection exists for mere custodial or "father figure" relationships between adults and children absent a biological or legal relationship.  Wheeler simply reiterates, as in Lehr, that biological parents must maintain a consistent parental relationship with their children to be afforded rights under the constitution.  894 F.3d at 1058.  In fact, the Ninth Circuit in Wheeler warned that its holding was "confine[d] . . . to the case before us, arising from the particular nature of Wheeler and Colbert's relationship as alleged. Questions concerning *all* adopted-out children or those raised in non-traditional family arrangements are not before us today." Id.

In any event, the FAC's allegations about decedent's relationship with plaintiff fall short of establishing that decedent had a custodial relationship with plaintiff that would be entitled to constitutional protection.  The majority of the

- 9 -
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

FAC's allegations regarding the relationship between plaintiff and decedent, including that plaintiff had been held out as decedent's child and that he viewed decedent as his father all of his life, were previously rejected by Judge Otero as establishing a custodial link.  While carrying no preclusive effect, Judge Otero's rulings in <u>Terry</u> remain instructive.  As Judge Otero described:

> Plaintiffs allege that [Shane Love] called Decedent "Pops, 'Dad', and 'J.R.' (TAC ¶ 3.) Plaintiffs also allege that S.L was viewed by Decedent as his son, that Decedent bought S.L. clothes, shoes, and took him to doctor's appointments, talked to S.L. about how everyone in life is not a friend, taught him about girls, and taught him about the use of condoms. *Id.* Plaintiffs allege that Decedent took S.L. to the gym and taught him how to do push-ups, pull-ups and how to bench press, Decedent 'did 90% of the cooking' and often left S.L. a special plate of food on the stove if he was not present to eat with his other siblings. *Id.* Finally, Plaintiffs allege that Decedent disciplined S.L. by telling him to read or do something productive, taught him how to pray, and "participated in/or influenced S.L.'s life on a daily basis. *Id.*

<u>Terry v. City of Pasadena</u>, 2019 WL 4139257, at *6 (C.D. Cal. June 17, 2019). These are largely the same allegations plaintiff asserts now.  <u>See</u> FAC ¶¶ 22-29. But based on such allegations, Judge Otero found plaintiff had not alleged a "custodial, biological, or legal relationship" between himself and decedent.  <u>Terry</u>, 2019 WL 4139257, at *6; <u>see also</u> <u>Terry v. City of Pasadena</u>, 2019 WL 2895192, at *11 (C.D. Cal. Apr. 22, 2019) (finding similar "conclusory assertions, without more, are insufficient to support a Fourteenth Amendment claim.").

The FAC attempts to salvage plaintiff's Fourteenth Amendment claim by offering new allegations that plaintiff "lived with Mr. Thomas from the age of one" and that "Mr. Thomas received Mr. Love into his home."  FAC ¶ 78.

Relying on state law, plaintiff contends that such allegations create that presumption that Mr. Thomas is the natural parent of Mr. Love even absent a biological relationship.  FAC ¶ 77 (citing CAL. FAM. CODE § 7611(d)).  Plaintiff is incorrect.

For starters, "Ninth Circuit and Supreme Court precedent controls" here.  Terry, No., 2019 WL 4139257, at *5 (C.D. Cal. June 17, 2019).  And, as mentioned above, there is no authority from the Ninth Circuit or U.S. Supreme Court conferring a Fourteenth Amendment due process right for loss of familial relationship claim by a purported non-biological, non-adoptive heir.

Regardless, even considering California law, the FAC still fails to allege that decedent was the "presumed" parent of plaintiff under Family Code section 7611(d).  Under that statute, a person is presumed to be a natural parent of the child if the presumed parent received the child into their home and openly holds out the child as their natural child.  CAL. FAM. CODE § 7611(d).  Here, plaintiff alleges in conclusory fashion that decedent "received Mr. Love into his home."  FAC ¶ 78.  The Court need not "accept as true allegations that are merely conclusory . . ."  In re Gilead Sciences Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

While plaintiff and decedent may have lived together, cohabitation is not the same as Thomas bringing plaintiff into his own home, and thus "receiving" Love into his custody and care.  In fact, the inferences that can be gleaned from the FAC are that plaintiff had his mother lived together and that it was decedent who was received into their home.  Decedent's contributions to the rent (FAC ¶ 24) is indicative of that dynamic.  Plaintiff's allegations from the *Terry Action* also merely state that plaintiff and decedent had "lived under the same roof", not that decedent received plaintiff into his home.  See *Terry Action*, Dkt. No. 85-1 at 8.

Plaintiff's citation to A.G. v. County of Los Angeles, 28 Cal. App. 5th 373

- 11 -
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

(2018) provides a helpful comparison. In that wrongful death case (brought under state law as opposed to the Fourteenth Amendment), the court stated that presumed parental status could apply to a non-biological father under Family Code section 7611(d). However, unlike decedent Thomas, the putative father in A.G. had actually brought the child into the home he had been living in, which was the home of the putative father's mother. A.G. v. County of Los Angeles, Appellant's Brief, 2017 WL 4330187, at * 7-8 (Cal. App., 2 Dist. Sept. 23, 2017).

Moreover, courts consider a variety of other factors when determining whether a person has received a child into their home and openly held out the child as their own, including, among others, efforts to place the person's name on the child's birth certificate, efforts to seek legal custody, efforts to complete paperwork on behalf of the child for receipt of public benefits. S.Y. v. S.B., 201 Cal. App. 4th 1023, 1034 (2011). Plaintiff does not allege any such efforts by Mr. Thomas in the FAC.

Elisa B. v. Superior Court, 37 Cal. 4th 108 (2005), which the FAC cites, highlights those pleading deficiencies. In Elisa B., the court found a woman had child support obligations over non-biological children after she had agreed "to raise children with her lesbian partner, supported her partner's artificial insemination using an anonymous donor, and received the resulting twin children into her home and held them out as her own . . . ." Id. at 113. The woman had claimed the children on her tax returns and obtained a life insurance policy for the benefit of the children. Id. at 114. The couple had "selected the children's names, joining their surnames with a hyphen to form the children's surname[, and t]hey each breast-fed all of the children." Id. They also had consulted with an attorney regarding adopting each other's child. Id.

Here, the FAC does not plead similar types of facts that are necessary to create a presumed parental relationship between a non-biological adult and child. It is not alleged that decedent and Ms. Lindsey ever contemplated Thomas

adopting or having legal custody of plaintiff, let alone that they took steps to pursue such methods. No changes were apparently contemplated as to plaintiff's birth certificate or plaintiff's last name. It is not alleged that plaintiff was ever claimed as Thomas's dependent, or that the relationship factored into the receipt of state benefits. And there are no allegations that Ms. Lindsey considered that decedent had parental rights over plaintiff. See Lehr, 463 U.S. at 264 ("The most effective protection . . . [to a father's] relationship with his child is provided by the laws that authorize formal marriage and govern its consequences. But the availability of that protection is, of course, dependent on the will of both parents of the child."). Indeed, when Ms. Lindsey initiated the first lawsuit related to decedent's death in 2016, she did not bring any claims on behalf of plaintiff even though she brought claims for the "children of Decedent and Lindsey." *Lindsey Action*, Dkt. No. 1 at ¶ 4.

In all, the FAC's allegations are insufficient to confer constitutional protection to the non-biological, non-adoptive relationship between plaintiff and decedent Thomas. Plaintiff's claim under the Fourteenth Amendment should be dismissed.

## VI. CONCLUSION

Based on the foregoing, the defendants respectfully request that the Court grant the instant motion in its entirety, dismissing the action, with prejudice.

DATED: October 16, 2023             CARPENTER, ROTHANS & DUMONT

                                    */s/ Scott J. Carpenter*
                                By: _____
                                    STEVEN J. ROTHANS
                                    JILL WILLIAMS
                                    SCOTT J. CARPENTER
                                    Attorneys for Defendants