LAW OFFICES OF CAREE HARPER
CAREE HARPER, SBN 219048
ch1@attorneyharper.com
401 Wilshire Blvd., Suite 1200
Santa Monica, CA 90401
Telephone: 213.386.5078

GIBSON, DUNN & CRUTCHER LLP
KAHN A. SCOLNICK, SBN 228686
kscolnick@gibsondunn.com
PATRICK J. FUSTER, SBN 326789
pfuster@gibsondunn.com
THOMAS M. DONOVAN, SBN 354056
tdonovan@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Plaintiff SHANE LOVE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SHANE LOVE,

Plaintiff,

v.

CITY OF PASADENA, a municipal entity; PHILLIP SANCHEZ; AARON VILLICANA; THOMAS BUTLER; ROBERT GRIFFITH; MICHAEL OROSCO; PHILLIP POIRIER; RAFAEL SANTIAGO; and DOES 1-10, inclusive,

Defendants.

CASE NO. 2:20-cv-06557-PA-SPx

**PLAINTIFF'S REPLY BRIEF ON REMAND REGARDING MOTION TO DISMISS**
**[Fed. R. Civ. P. 12]**

**Hearing:**
Date: September 8, 2025
Time: 1:30 p.m.
Place: Courtroom 9A
Judge: Hon. Percy Anderson

## TABLE OF CONTENTS

Page

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. The City misapplies the *Glucksberg* framework. .......... 1

A. The City denigrates the right to be raised by one's parents. .......... 1

B. The City's attempt to gerrymander Mr. Love out of the right to sue over a parent's death conflicts with precedent and its own test. .......... 4

C. The City ignores traditional parentage law and misreads its own historical sources. .......... 8

II. The City ignores the alternative shocks-the-conscience standard. .......... 10

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. California Highway Patrol*,
712 F.3d 446 (9th Cir. 2013) .......... 6

*Baumet v. United States*,
344 U.S. 82 (1952) .......... 9

*Brittain v. Hansen*,
451 F.3d 982 (9th Cir. 2010) .......... 10

*Brown v. Board of Education*,
347 U.S. 483 (1954) .......... 3

*In re Burrus*,
136 U.S. 586 (1890) .......... 7

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) .......... 10

*Dep't of State v. Muñoz*,
602 U.S. 899 (2024) .......... 5, 6

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) .......... 9

*Fuld v. Palestine Liberation Org.*,
606 U.S. 1 (2025) .......... 6

*Gutierrez v. Saenz*,
145 S. Ct. 2258 (2025) .......... 9

*Estate of Hernandez v. City of Los Angeles*,
96 F.4th 1209 (9th Cir. 2024) .......... 2

*Estate of Hernandez v. City of Los Angeles*,
139 F.4th 790 (9th Cir. 2025) .......... 2

*J.D.B. v. North Carolina*,
564 U.S. 261 (2011) .......... 9

# TABLE OF AUTHORITIES

**Page(s)**

*J.E.B. v. Alabama ex rel. T.B.*,
511 U.S. 127 (1994)........................................................................................3

*Jamgotchian v. Ferraro*,
93 F.4th 1150 (9th Cir. 2024)........................................................................7

*Keates v. Koile*,
883 F.3d 1228 (9th Cir. 2018)........................................................................2

*Knick v. Township of Scott*,
588 U.S. 180 (2019)........................................................................................7

*Lofton v. Secretary of Dep't of Children and Family Servs.*,
358 F.3d 804 (11th Cir. 2004)........................................................................5

*Love v. Villacana*,
73 F.4th 751 (9th Cir. 2023)...........................................................................7

*Martinez v. City of Oxnard*,
337 F.3d 1091 (9th Cir. 2003)......................................................................10

*Michael H. v. Gerald D.*,
491 U.S. 110 (1989)....................................................................................8, 9

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003)..........................................................................2

*Murguia v. Landon*,
61 F.4th 1096 (9th Cir. 2023)........................................................................10

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022)............................................................................................3

*Obergefell v. Hodges*,
576 U.S. 644 (2015)..............................................................................3, 4, 6, 9

*Ochoa v. City of Mesa*,
26 F.4th 1050 (9th Cir. 2022)..........................................................................2

*Pavan v. Smith*,
582 U.S. 563 (2017)..........................................................................................5



Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

*People v. Ryan*,
76 Cal. App. 4th 1304 (1999) .......... 7

*Prince v. Massachusetts*,
321 U.S. 158 (1944) .......... 5

*Regino v. Staley*,
133 F.4th 951 (9th Cir. 2025) .......... 7, 10

*Reno v. Flores*,
507 U.S. 292 (1993) .......... 5, 6

*Sheetz v. County of El Dorado*,
601 U.S. 267 (2024) .......... 9

*Smith v. City of Fontana*,
818 F.2d 1411 (9th Cir. 1987) .......... 2, 7

*Smith v. Org. of Foster Families for Equality & Reform*,
431 U.S. 816 (1977) .......... 3, 5, 9

*Troxel v. Granville*,
530 U.S. 57 (2000) .......... 7

*United States v. Windsor*,
570 U.S. 744 (2013) .......... 7

*Washington v. Glucksberg*,
521 U.S. 702 (1997) .......... 1, 8, 9

*Wehsener v. Jernigan*,
86 Cal. App. 5th 1311 (2022) .......... 7

*Witt v. Dep't of Air Force*,
527 F.3d 806 (9th Cir. 2008) .......... 5

**Constitutional Provisions**

U.S. Const. Amend. XIV, § 1, cl. 3 .......... 1

# TABLE OF AUTHORITIES

**Page(s)**


**Statutes**

42 U.S.C. § 1983 .......... 7

1870 Cal. Stat. ch. 385, § 1 at 530 .......... 8

1870 Cal. Stat. ch. 385, § 9 at 531 .......... 8

Cal. Fam. Code §§ 300–310 .......... 7

Cal. Fam. Code § 3010(a) .......... 6

Cal. Fam. Code § 3900 .......... 6

Cal. Fam. Code § 7611 .......... 6

Cal. Fam. Code § 7611(d) .......... 6, 7, 8, 9

Cal. Fam. Code §§ 8600–8625 .......... 7

Cal. Prob. Code §§ 1500–1783 .......... 7

**Other Authorities**

William Baude, *Is Originalism Our Law?*, 115 Colum. L. Rev. 2349 (2015) .......... 3

City of Pasadena, *Heritage: A Short History of Pasadena* .......... 10

James Kent, *Commentaries on American Law* (1827) .......... 9

## INTRODUCTION

This Court need break no new ground in denying the City's motion to dismiss. Under the test of *Washington v. Glucksberg*, 521 U.S. 702 (1997), the Ninth Circuit has already recognized that children have a fundamental right to be raised by their parents. The City tries to exclude Mr. Love from that longstanding right because Mr. Thomas became his father through California's holding-out presumption. But the Supreme Court has rejected attempts to redefine fundamental familial rights in terms of who claims those rights. History and tradition only reinforce that men who received their partners' children into their homes and held them out to the world as their children had parental rights. And Mr. Love also has pleaded a plausible claim under the alternative shocks-the-conscience standard, which the City inexplicably overlooks. At every step, the City discards history, tradition, and precedent in seeking an arbitrary carveout of Mr. Love from the well-recognized right under the Due Process Clause to be free from the unjustified killing of a parent. This Court should deny the motion to dismiss.

## ARGUMENT

### I. The City misapplies the *Glucksberg* framework.

The City commits three major errors in applying *Glucksberg*: (A) its rejection of a child's fundamental right to be raised by his parents conflicts with Ninth Circuit precedent, (B) its attempt to exclude Mr. Love from that right because of how Mr. Thomas became his parent conflicts with Supreme Court precedent, and (C) its historical sources confirm in any event that California's ratification-era holding-out presumption is deeply rooted in history and tradition.

#### A. The City denigrates the right to be raised by one's parents.

The City's broadest argument is that children have no liberty interest in the "companionship" of their parents. Dkt. 51 at 8. Seizing on stray quotes from historical commentary, the City insists that the relationship between parents and children is "akin to a 'master-servant' relationship, at best, or a 'master-slave' relationship, at worst." *Id.* at 9. Equating the relationship between Mr. Love and Mr. Thomas as slave to master is

as unseemly as it is wrong—the upshot would be that Mr. Love cannot sue over the killing of his father, an unarmed Black man. This Court should reject the City's attempt to remake the Constitution's substantive protections for parents and children.

To begin with, the City's historical attack on children's liberty interest in their relationships with their parents is misdirected. The Ninth Circuit has already held that children have "a substantive due process claim based on their loss of [a parent's] companionship." *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987). Although the City insinuates that the Ninth Circuit has not addressed this issue under the fundamental-rights framework of *Glucksberg*, *see* Dkt. 51 at 12–13, its decisions have reaffirmed that the "right to familial association" is a "fundamental liberty interest," *Keates v. Koile*, 883 F.3d 1228, 1336 (9th Cir. 2018); *see, e.g.*, *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022). The City's disagreement is not with Mr. Love's claim, but with the Ninth Circuit's decisions already endorsing the theory that children can sue under the Due Process Clause when the government kills a parent.

The City echoes criticisms from a recent dissenting opinion that took aim at the "blackletter law in this circuit that a child has a constitutionally recognized interest in the companionship of her parents." *Estate of Hernandez v. City of Los Angeles*, 139 F.4th 790, 814 (9th Cir. 2025) (R. Nelson, J., dissenting in relevant part). Like that recent dissent, the City questions whether that blackletter law is right as an original matter, accusing the Ninth Circuit of establishing children's rights "on its own." Dkt. 51 at 12–13 (citing *Smith*, 818 F.2d at 1418). But the Ninth Circuit this past June reaffirmed that children have a "'Fourteenth Amendment liberty interest in the companionship and society'" of their parents. *Estate of Hernandez v. City of Los Angeles*, 96 F.4th 1209, 1221 (9th Cir. 2024), *adopted en banc*, 139 F.4th at 804. And this is neither the time nor the place for the City to seek reconsideration of Ninth Circuit precedent. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

The City also mangles the governing history-and-tradition framework. If *Glucksberg* led the City to conclude that children have the rights of slaves under the

Constitution, that should have been a blinking neon sign that the City has misunderstood both the test and the historical materials. Though some might caricature originalism as a wooden approach that would resurrect second-class rights for women, minorities, and other groups who were mistreated historically, the Supreme Court has not interpreted the Constitution as making historical patterns of legal subordination a self-fulfilling prophecy. *E.g.*, *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 60–63 (2022) (disregarding under Second Amendment historical state laws that prohibited gun possession by Black people); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 132–34 (1994) (overriding common-law exclusion of women from juries); *Brown v. Board of Education*, 347 U.S. 483, 489 (1954) (invalidating school segregation despite "practices in racial segregation" at the Fourteenth Amendment's ratification). That is why the fundamental right to marriage is not limited by historical practices like the wife's loss of separate legal personhood through coverture, prohibitions on interracial marriage, or criminalization of same-sex relations. *Obergefell v. Hodges*, 576 U.S. 644, 660, 664, 671 (2015); *see* William Baude, *Is Originalism Our Law?*, 115 Colum. L. Rev. 2349, 2382 (2015) (describing the "originalist pedigree" of the "evolving reasoning" on the right to marriage in *Obergefell*).

Just as the right to marriage is not defined by the control exercised by a man over his wife in 1868, a child's right to be raised by his parents is not defined by the control exercised by a father over his children in 1868. The Due Process Clause guarantees the "intrinsic human righ[t]" to "family privacy" from government overreach, as informed by "'this Nation's history and tradition.'" *Smith v. Org. of Foster Families for Equality & Reform*, 431 U.S. 816, 845 (1977) (*OFFER*). These constitutional protections "ste[m] from the emotional attachments that derive from the intimacy of daily association," *id.* at 844—not from the subordination of the child to the parent as servant or slave to master, *contra* Dkt. 51 at 8–9. Originalism is not a game where you unearth the most extreme quote that might support stripping constitutional rights from a class of people (women, minorities, children, and so forth). That is a version of the history-and-tradition

test that no court has adopted and that no one advocates—except the City of Pasadena.

**B. The City's attempt to gerrymander Mr. Love out of the right to sue over a parent's death conflicts with precedent and its own test.**

Because the Ninth Circuit has recognized that children have a fundamental right to be raised by their parents, the City really seeks dismissal on the theory that Mr. Love lacks that same right based on how Mr. Thomas became his father. Dkt. 51 at 13. The City insists that *Gluckberg*'s "'careful description' standard" requires this Court to define Mr. Love's interest as "the right of a 15-year-old to the companionship of an alleged father-figure with whom he had no biological or legal relationship." *Id.* at 5. *Obergefell* forecloses the City's interpretation of *Glucksberg*. And the City distorts its description of the interest at stake here by omitting that Mr. Thomas raised Mr. Love from the age of one and had parental rights and responsibilities under California law—an unquestionable "legal relationship." *See* FAC ¶¶ 22, 77–79, Dkt. 33.

In *Obergefell*, the States opposing same-sex marriage read *Glucksberg* the same way that the City does here. They argued that the plaintiffs did "not seek to exercise the right to marry but rather a new and nonexistent 'right to same-sex marriage.'" 576 U.S. at 671. In other words, the States wanted to carve out a class of people from the general right to marry. But the Supreme Court rejected that argument. The Due Process Clause protects "the right to marry in its comprehensive sense," which explained why prior landmark decisions didn't ask whether the Due Process Clause protects a "'right to interracial marriage,'" "'right of inmates to marry,'" or "'right of fathers with unpaid child support duties to marry.'" *Ibid.* And for good reason: "If rights were defined by who exercised them in the past, then received practices could serve as their own continued justification and new groups could not invoke rights once denied." *Ibid.*

That same analysis forecloses the City's attempt to insert Mr. Love's and Mr. Thomas's personal characteristics into the description of the fundamental right to be raised by one's parents. Dkt. 50 at 11–12. The City argues that biology is the true marker of parental status under *Glucksberg*. *Id.* at 7–8. But the Supreme Court has held

that "biological relationships are not [the] exclusive determination of the existence of a family" under the Due Process Clause. *OFFER*, 431 U.S. at 843. The Court, for example, allowed an aunt acting as her niece's guardian under state law to assert parental rights under the Due Process Clause. *Prince v. Massachusetts*, 321 U.S. 158, 159, 166 (1944). While the City argues that *Prince* allows guardians to assert only free-exercise and equal-protection claims, Dkt. 51 at 10–11, the Court has understood *Prince* to establish that liberty interests under the Due Process Clause "exten[d] beyond natural parents" to "legal custodians," *OFFER*, 431 U.S. at 843 n.49. Adoption likewise is "the legal equivalent of biological parenthood." *Id.* at 844 n.51. And more recently, the Court held that States could not deny "legal recognition" of non-biological parental status to same-sex spouses, *Pavan v. Smith*, 582 U.S. 563, 567 (2017) (per curiam), which exposes the City's error in embracing out-of-date precedent holding that States could exclude gays and lesbians from their adoption systems, Dkt. 51 at 9–10 (citing *Lofton v. Secretary of Dep't of Children and Family Servs.*, 358 F.3d 804, 812 (11th Cir. 2004)); *see also Witt v. Dep't of Air Force*, 527 F.3d 806, 818 n.6 (9th Cir. 2008) (criticizing *Lofton*). Those decisions didn't ask whether guardians, adoptive parents, or same-sex spouses historically could invoke traditional parental rights. Instead, the Court applied the Due Process Clause evenhandedly across all legal custodians.

The City's other decisions don't support wielding *Glucksberg*'s careful-description requirement to deny Mr. Love the same rights that any other child would have after a parent's killing. Dkt. 51 at 5. In *Reno v. Flores*, 507 U.S. 292 (1993), unaccompanied minors in immigration detention didn't have a fundamental right to live with unrelated persons who were "willing-and-able private custodian[s]." *Id.* at 302. But *Flores* reserved the question whether children have a right to be released "into the custody of [their] parents, legal guardian, or even close relatives." *Ibid.* Because Mr. Thomas had parental rights under California law, he falls into the historical core that *Reno* did not disturb. In *Department of State v. Muñoz*, 602 U.S. 899 (2024), a woman didn't have "the right to bring a noncitizen spouse to the United States" from abroad. *Id.* at 911. Mr. Love here

seeks only compensation for the City's direct termination of a parent-child relationship by killing Mr. Thomas—a claim that the Ninth Circuit has long recognized. *E.g.*, *A.D. v. California Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013). Plus, *Flores* and *Muñoz* interpreted the Fifth Amendment in light of Congress's sovereign authority over the immigration system, so their analysis doesn't necessarily translate to the Fourteenth Amendment. *Muñoz*, 602 U.S. at 912–16; *Flores*, 507 U.S. at 305–06; *see Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 13 (2025) (rejecting uniform interpretation of due process across Fifth and Fourteenth Amendments).

The City gives up its suggestion that only biological paternity is deeply rooted under *Glucksberg* in conceding that a child can sue under the Due Process Clause based on "biological or *legally equivalent* relationships." Dkt. 51 at 10 (emphasis added). *Prince* and *OFFER* made that concession unavoidable for the City. And as *Obergefell* interpreted *Glucksberg*, the City can exclude Mr. Love from the right to be raised by his parents only if there is "sufficient justification" for excluding children whose parents gained custody rights under the holding-out presumption. 576 U.S. at 671. The City cannot make that showing—and so does not even try.

The City also loses even under its own test. As it reads *Glucksberg*, the Due Process Clause protects parent-child relationships that have "a biological, marital, adoptive, or other *legally established connection*." Dkt. 51 at 14 (emphasis added). Mr. Love satisfies that test because Mr. Thomas was his father in a "legal sense." *Id.* at 4. California law called Mr. Thomas a "natural parent," Cal. Fam. Code § 7611(d), made him "equally entitled to the custody of the child," § 3010(a), and imposed "equal responsibility to support their child," § 3900. If those provisions don't describe a parent in a "legal sense," the City defines that term according to neither law nor common sense.

While the City concedes that Mr. Love alleged that Mr. Thomas was his father under California Family Code § 7611(d), it asserts that "no court ever made such a determination or bestowed that status on Mr. Thomas." Dkt. 51 at 14. The City betrays its misunderstanding of California family law. The presumptions in § 7611 establish

parental rights and duties "by 'operation of law'" even absent "a prior judicial determination of [the father's] status." *People v. Ryan*, 76 Cal. App. 4th 1304, 1312 & n.7 (1999). No judicial decree was necessary to make Mr. Thomas the *legal* parent of Mr. Love. *E.g.*, *Wehsener v. Jernigan*, 86 Cal. App. 5th 1311, 1325 (2022). And any suggestion by the City that Mr. Love first had to litigate Mr. Thomas's already-existing parental status in state court would ignore the "settled rule" that "exhaustion of state remedies is *not* a prerequisite to an action under 42 U.S.C. § 1983." *Knick v. Township of Scott*, 588 U.S. 180, 185 (2019) (cleaned up); *see Jamgotchian v. Ferraro*, 93 F.4th 1150, 1156 (9th Cir. 2024). Nor can the City complain after removing the case from state court to federal court that this Court will apply § 7611(d) in the first instance. *Love v. Villacana*, 73 F.4th 751, 755–56 (9th Cir. 2023).

The City's position is incoherent, too. The City accepts marriage, adoption, and guardianship as relationships that could support a due-process claim. Dkt. 51 at 14. At the same time, the City argues that state law is irrelevant to the analysis. *Id.* at 14–15. But state law, not federal law, governs marriage, Cal. Fam. Code §§ 300–310, adoption, §§ 8600–8625, and guardianship, Cal. Prob. Code §§ 1500–1783. And federal law traditionally "defer[s] to state-law policy decisions with respect to domestic relations." *United States v. Windsor*, 570 U.S. 744, 767 (2013) (citing *In re Burrus*, 136 U.S. 586, 593–94 (1890)). The City articulates no principled reason why courts should look to state law selectively, gerrymandering out only the law establishing Mr. Thomas as Mr. Love's father. Nor does relying on state parentage law relieve Mr. Love of the burden to "identif[y] a fundamental right." *Regino v. Staley*, 133 F.4th 951, 967 (9th Cir. 2025). The underlying liberty interest—the parent's right to "the care, custody, and control of [his] children," and the child's corresponding right to be raised by his parents—is the "oldest of the fundamental liberty interests" created by the Constitution. *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality); *see Smith*, 818 F.2d at 1418.

In short, state law generally defines *who* is a parent, even though federal law defines *what* fundamental rights parents and children have. Mr. Love has alleged a "legal

relationship" supporting his due-process claim because Mr. Thomas had parental rights and duties under California law. Dkt. 38 at 5. And the City no longer disputes that Mr. Love has alleged both requirements: that Mr. Thomas received him into his home and held him out as his own child. Cal. Fam. Code § 7611(d). This Court should deny the City's motion to dismiss because Mr. Love has invoked a fundamental right to be raised by his parents that has since been reaffirmed under *Glucksberg*.

**C. The City ignores traditional parentage law and misreads its own historical sources.**

Because *Glucksberg* does not require this Court to define the fundamental right to be raised by one's parents in terms of the specific way that the parent gained custody rights, this Court can deny the motion without addressing the holding-out presumption's historical pedigree. But that presumption *is* "'deeply rooted in this Nation's history and tradition.'" *Glucksberg*, 521 U.S. at 721. California's holding-out presumption dates back to 1870, grew out of an 1850 law that assigned parentage based on public acknowledgement of the child, and was part of a rich body of public-acknowledgment statutes at the Fourteenth Amendment's ratification. Dkt. 50 at 13–15. From early days, society has recognized as fathers men who take their partners' children into their homes and raise them as their own children. California codified—not rebuked—our traditional understanding of such families in enacting the predecessor to § 7611(d).

The City cherry-picks quotes from Locke, Blackstone, and Kent about parents' control over their children to arrive at a conclusion—that parental rights spring from biology—that conflicts with English common law and early American law. At the Fourteenth Amendment's ratification, paternity tests didn't exist. So States assigned parental rights based on other markers of family status, including marriage to the mother, public acknowledgment of the child, and (later) formal adoption procedures. *Michael H. v. Gerald D.*, 491 U.S. 110, 124 (1989) (plurality) (marital presumption); 1870 Cal. Stat. ch. 385, § 9 at 531 (historical holding-out presumption); *id.* § 1, at 530 (California's first adoption statute). These rules often—but not always—tracked biological paternity. The

Supreme Court thus honored history and tradition when it rejected "biological relationships" as the "exclusive determination of the existence of a family." *OFFER*, 431 U.S. at 843. And by the same token, the City turns its back on history and tradition when advancing biology as the intrinsic source of parental rights.

The City grounds its analysis in "Lockean Natural Rights Guarantees." Dkt. 51 at 7. But the Supreme Court has not looked to Locke to understand the Fourteenth Amendment. *E.g.*, *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022); *Glucksberg*, 521 U.S. 702. Only *dissents* have equated "life, liberty, and property" with "natural rights that existed before government" based on "the political theories of John Locke." *Gutierrez v. Saenz*, 145 S. Ct. 2258, 2274 (2025) (Thomas, J., dissenting) (citing *Obergefell*, 576 U.S. at 726–27 n.4 (Thomas, J., dissenting)). While natural rights might be fodder for dissents or law reviews, they have no place in adjudicating Mr. Love's rights under the Due Process Clause, as construed by the Supreme Court.

The City's historical discussion helps Mr. Love anyway. The City admits that an influential early American commentator stated that, if a man "takes the wife's *child into his own house*; he is then considered as standing *in loco parentis* and is responsible for the maintenance and education of the child," and "by that act, he *holds the child out to the world as part of his family*." 2 James Kent, *Commentaries on American Law* 192 (1827) (emphasis added); *see* Dkt. 51 at 8. The Supreme Court often relies on Kent's Commentaries when interpreting the Constitution. *E.g.*, *Sheetz v. County of El Dorado*, 601 U.S. 267, 278 (2024); *Michael H.*, 491 U.S. at 125 (plurality). And his language closely mirrors California's decision to assign parental rights when a man "receives the child into [his] home and openly holds out the child as [his] natural child." Cal. Fam. Code § 7611(d). Although the City tries to limit that language specifically to the mother's husband, *in loco parentis* applied more broadly to any custodian because "[t]he necessity of guardians results from the inability of infants to take care of themselves." *J.D.B. v. North Carolina*, 564 U.S. 261, 273 n.6 (2011) (quoting Kent, *supra*, 233); *see, e.g.*, *Baumet v. United States*, 344 U.S. 82, 84 (1952) (uncle and aunt were *in loco*

*parentis* after taking nephew into their home). Mr. Thomas was *in loco parentis* in fact and in law after raising Mr. Love as his son for 14 years at home and in public.

Whether one looks to traditional parentage law or Kent's Commentaries, the City has no cause to disparage the holding-out presumption as a "'mere novelty.'" Dkt. 51 at 13. California law has recognized that presumption, first enacted in 1870, for longer than Pasadena itself. City of Pasadena, *Heritage: A Short History of Pasadena*, https://tinyurl.com/3v9cusue (City incorporated in 1886). That Mr. Thomas became Mr. Love's father through the holding-out presumption is no reason to deny Mr. Love the traditional rights secured by the Due Process Clause.

**II. The City ignores the alternative shocks-the-conscience standard.**

When the parties requested briefing, Mr. Love previewed that he could allege a plausible due-process claim under not only *Glucksberg* but also "the 'shocks the conscience' standard, under which deliberate government action violates the Fourteenth Amendment if it is 'arbitrary' and 'unrestrained by the established principles of private right and distributive justice.'" *Regino*, 133 F.4th at 960 n.5 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)); *see* Dkt. 46 at 2. History and tradition, as well as the Ninth Circuit's longstanding precedent, support applying that test here. Dkt. 50 at 5–9. And the City says nothing about the shocks-the-conscience standard, even though the Ninth Circuit has held that a plaintiff must establish *either* conscience-shocking conduct *or* the deprivation of a fundamental right—not necessarily both. *Martinez v. City of Oxnard*, 337 F.3d 1091, 1092 (9th Cir. 2003) (per curiam). Mr. Love reiterates that gave Mr. Love had a liberty interest arising from Mr. Thomas's parental status and custodial rights under California law that the officers and the City terminated without due process of law when they killed Mr. Thomas in a conscience-shocking way. *Murguia v. Landon*, 61 F.4th 1096, 1119 & nn.17–18 (9th Cir. 2023); *Brittain v. Hansen*, 451 F.3d 982, 992 (9th Cir. 2010).

**CONCLUSION**

This Court should deny the motion to dismiss.

Dated: August 18, 2025

Respectfully submitted,

LAW OFFICES OF CAREE HARPER

By: *\/s/ Caree Harper*
Caree Harper

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Patrick J. Fuster*
Patrick J. Fuster

Attorneys for Plaintiff SHANE LOVE

## ECF ATTESTATION

The undersigned hereby attests under Local Rule 5-4.3.4(a)(2) that the concurrence in the filing of this document has been obtained from the above signatories.

Dated: August 18, 2025

By: *\/s/ Patrick J. Fuster*
Patrick J. Fuster