STEVEN J. ROTHANS – State Bar No. 106579
SCOTT CARPENTER – State Bar No. 253339
CARPENTER, ROTHANS & DUMONT LLP
500 South Grand Avenue, 19th Floor
Los Angeles, California 90071
(213) 228-0400 / (213) 228-0401 (Fax)
jwilliams@crdlaw.com | scarpenter@crdlaw.com

MICHELE BEAL BAGNERIS, City Attorney
State Bar No. 115423
ARNOLD F. LEE, Assistant City Attorney
State Bar No. 278610
100 N. Garfield Avenue, Suite N-210
Pasadena, CA 91109
(626) 744-4141 / (626) 744-4190 (Fax)
mbagneris@cityofpasadena.net | aflee@cityofpasadena.net

Attorneys for Defendants, City of Pasadena,
Chief Phillip Sanchez and Officers Aaron Villacana,
Thomas Butler, Robert Griffith, Michael Orosco,
Phillip Poirier, and Raphael Santiago

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANE LOVE,<br><br>                 Plaintiff,<br><br>vs.<br><br>CITY OF PASADENA, a municipal entity; PHILLIP SANCHEZ; AARON VILLACANA, THOMAS BUTLER, ROBERT GRIFFITH, MICHAEL OROSCO, PHILLIP POIRIER, RAFAEL SANTIAGO; and DOES 1-10 inclusive,<br><br>                 Defendants. | Case No.: 2:20-cv-06557-PA-SPx<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S OPENING BRIEF ON REMAND REGARDING MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Fed. R. Civ. P., 12(b)(6)]<br><br>DATE:   Sept. 8, 2025<br>TIME:    1:30 p.m.<br>COURTROOM:  9A |

COME NOW Defendants, City of Pasadena, Chief Phillip Sanchez and Officers Aaron Villicana, Robert Griffith, Michael Orosco, Thomas Butler, Phillip

1  Poirier, and Raphael Santiago, and hereby submit their Response to Plaintiff's
2  Opening Brief on Remand Regarding Defendants' Motion to Dismiss the First
3  Amended Complaint.

4  DATED:  August 18, 2025                  CARPENTER, ROTHANS & DUMONT

5                                                          */s/ Scott J. Carpenter*
                                             By: _____
6                                                  STEVEN J. ROTHANS
                                                   SCOTT J. CARPENTER
7                                                  Attorneys for Defendants

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's Opening Brief confirms why dismissal is appropriate. Putting aside that plaintiff misstates the issue before the Court, as well as plaintiff's erroneous arguments that state law created substantive due process rights, plaintiff has not demonstrated that he has a cognizable liberty interest in the companionship of decedent Thomas, a "father figure" with whom he had no biological or legal connection. Love v. Villacana, 2025 WL 1392134, at *1 (9th Cir. May 14, 2025) ("Love II").

Relying principally on historical inheritance laws in California that allowed biological parents to legitimize their children born out of wedlock, plaintiff has failed to show that the purported interest in his relationship with Thomas is "so rooted in the traditions and conscience of our people as to be ranked as fundamental and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (quotations omitted). This action should be dismissed.

## II. DISCUSSION

### A. The "Shocks The Conscience" Standard Is Not At Issue On Remand.

Plaintiff's Opening Brief distorts the issue before this Court on remand. According to plaintiff, under Regino v. Staley, 133 F.4th 951 (9th Cir. 2025), there are two different legal standards to apply here: a "fundamental rights standard" and a "shocks the conscience standard." Pl's Br. at 4. Plaintiff contends that the former involves analysis consistent with Glucksberg, while the latter standard does not. Id. Plaintiff seems to suggest that this Court can apply either standard now. Pl's Br. at 4-5. Plaintiff is mistaken.

In its recent order, the Ninth Circuit stated that the issue on remand is whether plaintiff has alleged "a right [that] is cognizable to state a substantive due

1  process claim." Love II, 2025 WL 1392134, at *1.  To do so, the Ninth Circuit
2  directed that the "district court must begin with a 'careful description' of the
3  asserted fundamental liberty interest . . . [and t]he district court must then decide
4  whether an asserted interest is 'objectively, deeply rooted in this Nation's history
5  and tradition, and implicit in the concept of ordered liberty, such that neither
6  liberty nor justice would exist if [it was] sacrificed.'" Id. (quoting Regino and
7  Glucksberg).  In no uncertain terms, the Ninth Circuit stated that it was remanding
8  the case "for the district court to apply the *Glucksberg* analysis . . ." Id.

9      Despite that unequivocal mandate, plaintiff, relying exclusively on a
10 footnote in Regino, attempts to bypass the Glucksberg analysis by claiming that he
11 satisfies the "shocks the conscience" standard.  That standard, however, is
12 immaterial to the key issue before the Court – namely, whether Love has asserted a
13 ***cognizable liberty interest*** in his relationship with decedent under the Due Process
14 Clause.

15     The "shocks the conscience" standard touches upon "the cognizable level of
16 executive abuse of power." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846
17 (1998).  It is meant as a "standard of fault" or government culpability; a "criteria to
18 identify what is fatally arbitrary" in terms of government conduct that can violate
19 due process.  Id. at 846, 852; accord Breithaupt v. Abram, 352 U.S. 432, 435
20 (1957) (discussing the "shocks the conscience" standard in terms of government
21 "conduct that was so 'brutal' and 'offensive' that it did not comport with
22 traditional ideas of fair play and decency"); United States v. Salerno, 481 U.S. 739,
23 746 (1987) ("substantive due process prevents ***the government from engaging in***
24 ***conduct*** that 'shocks the conscience'") (emphasis added).

25     Plaintiff's reliance on Cnty. of Sacramento v. Lewis and Martinez v. City of
26 Oxnard is misplaced.  In both cases, the issue was not whether the plaintiffs were
27 asserting cognizable due process interests, but rather whether the government's
28 conduct constituted a deprivation of those interests.

In <u>Lewis</u>, parents of a motorcycle passenger killed during a police pursuit brought a claim under 42 U.S.C. § 1983 asserting the ***passenger's*** substantive due process rights. As such, the Court was not considering whether a protected interest existed, as the passenger decedent had an undisputed right to life and liberty. Instead, the Court was considering whether the sheriff's deputy's "behavior" "shock[ed] the conscience." <u>Lewis</u>, 523 U.S. at 855. The Court in <u>Lewis</u> actually noted the difference between the <u>Glucksberg</u> analysis and "shocks the conscience" test, stating that "*Glucksberg* was about the need for historical examples of recognition of ***the claimed liberty protection***," while the latter issue was whether executive action "reach[es] the degree of the egregious." <u>Id.</u> at 847 n.8 (emphasis added).

In <u>Martinez v. City of Oxnard</u>, a suspect brought a 1983 claim alleging that a police officer subjected him to coercive interrogation after he had been shot. 337 F.3d 1091, 1092 (9th Cir. 2003). The issue was not whether the plaintiff had a constitutionally protected right, since the right to be free from coercive police interrogation had been "clearly established." <u>Id.</u> Instead, the question was whether the officer's conduct rose to the level of being a violation of those clearly established due process rights. As the Ninth Circuit determined, "[i]f Martinez's allegations are proven, it would be impossible not to be shocked by Sergeant Chavez's actions." <u>Id.</u>

Here, before deciding whether defendants' conduct constituted a deprivation of a liberty interest, plaintiff must first allege that he has a cognizable liberty interest in the relationship with decedent. See <u>Brittain v. Hansen</u>, 451 F.3d 982, 991 (9th Cir. 2006) ("in order to establish a constitutional violation based on substantive due process, [a plaintiff] must show ***both*** a deprivation of her liberty ***and*** conscience shocking behavior by the government.") (emphasis added). To make that threshold determination, the Ninth Circuit explicitly directed this Court to apply the <u>Glucksberg</u> analysis. <u>Love II</u>, 2025 WL 1392134, at *1.

- 3 -

DEFENDANTS' RESPONSE TO PLAINTIFF'S OPENING BRIEF ON
REMAND REGARDING MOTION TO DISMISS

### B. State Law Did Not Create A Constitutionally Protected Parent-Child Relationship.

In another attempt to avoid the <u>Glucksberg</u> analysis, plaintiff contends that he had a constitutionally protected relationship with Thomas under California law. In particular, plaintiff argues that he "had the same liberty interest as any other child even though Mr. Thomas gained the status of his father[hood] through the holding-out presumption in California Family Code § 7611(d)." Pl's Br. at 7. According to plaintiff, "there is nothing unusual about looking to state law as the source of liberty interests." Pl's Br. at 7-8. However, plaintiff confuses *procedural* versus *substantive* due process principles. Substantive and procedural due process claims serve fundamentally different purposes, and thus the test for determining what constitutes a liberty interest differs depending on the claim.

As this Court correctly held in its prior dismissal order, for purposes of a substantive due process claim, "federal courts look to federal law to determine whether a relationship is protected by the Fourteenth Amendment." Dkt. No. 38 at 4. That is because a liberty interest protected by *substantive* due process includes only "those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' . . . and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" <u>Glucksberg</u>, 521 U.S. at 720–21 (citations omitted).

Conversely, federal courts enjoy more leeway to look to state law in the procedural due process context because "[p]rocedural due process is not limited to interests which are 'fundamental.'" <u>Brittain</u>, 451 F.3d at 1000. Thus, a liberty interest for the purpose of a procedural due process claim "may arise from an expectation or interest created by state laws or policies." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005). As the Ninth Circuit explained in <u>Regino</u>, the "procedural component of the Due Process Clause protects more than just fundamental rights" and, accordingly, *procedural* due process interests can be "derived from state law."

- 4 -

See Regino, 133 F.4th at 967. On the other hand, *substantive* due process interests are determined under the Glucksberg analysis. Id. at 960.

Plaintiff claims that "most substantive entitlements protected by the Due Process Clause are 'not created by the Constitution' but instead 'stem from an independent source such as state law.'" Pl's Br. at 8 (quoting Town of Castle Rock, Colorado v. Gonzales, 545 U.S. 748, 756 (2005)). Plaintiff's reliance on Castle Rock demonstrates his conflation of substantive and procedural due process. In that case, the Court was determining whether a state-law restraining order created a constitutionally protected property interest in having the police enforce the restraining order. Id. at 750-51. When the Court stated that constitutional entitlements "are not created by the Constitution" but can arise from state law (which plaintiff quoted), the Court was explicitly discussing "[t]he procedural component of the Due Process Clause." Id. at 756.

The holding in James v. Rowlands, 606 F.3d 646 (9th Cir. 2010) also highlights plaintiff's confusion. In James, a "biological" father brought substantive and procedural due process claims based on the alleged failure of social workers and law enforcement to inform the father that his daughter had been molested. Id. at 649. The Court, in conducting a qualified immunity analysis, noted that the father's substantive due process rights stemmed, not from state law, but from the "well-established liberty interest" of biological parents to participate in the care, custody, and management of their children. Id. at 651. The father's procedural due process interests, on the other hand, stemmed from California law. See id. at 656 (in analyzing the father's "procedural due process rights," holding that "[s]tate law can create a right that the Due Process Clause will protect").

Plaintiff's citations to Brittain v. Hansen and Murguia v. Langdon, 61 F.4th 1096, 1100 (9th Cir. 2023) similarly miss the mark. In those cases, substantive due process rights were not created from state law but from the biological parents' fundamental rights to the "companionship, care, custody, and management of their

- 5 -

children" (Brittain, 451 F.3d at 992) and "familial association" (Murguia, 61 F.4th at 1118).

Backlund v. Barnhart and Miller v. California remain instructive. In Backlund, foster parents sued the State of Washington for interfering with their authority to impose corporal punishment on their foster children. Backlund v. Barnhart, 778 F.2d 1386, 1387 (9th Cir. 1985). In finding that the foster parents did not have a substantive due process right to impose corporal punishment, the Ninth Circuit explained that "[t]rue liberty rights do not flow from state laws, which can be repealed by action of the legislature . . . . The very fact that the relationship before us is a creature of state law . . . demonstrates that it is not a protected liberty interest, but an interest limited by the very laws which create it." Id. at 1390 (quotations omitted). In Miller, the Ninth Circuit found that grandparents who were supposedly "de facto" parents under California law, and who had obtained guardianship, did not have a constitutionally protected right to their relationship with their grandchildren. 355 F.3d 1172, 1176 (9th Cir. 2004).

Although plaintiff here claims that decedent had parental rights "by operation of law as a real-deal parent" pursuant to Family Code section 7611(d) (Pl's Br. at 9), that statute "is a creature of state law, which can be repealed by the action of the legislature." Backlund, 778 F.2d at 1390. Any purported rights under Section 7611(d) can hardly be considered fundamental if they can be extinguished at any time by legislative action. Moreover, unlike the plaintiffs in Brittain, Murguia, Backlund or Miller, Thomas never actually acquired any legally recognized or court-ordered rights under Section 7611(d) or any other state law. He never sought presumed parent status, nor did he ever seek to legally formalize his relationship with Love through adoption, marriage, guardianship, etc.

Plaintiff erroneously asserts that "[c]ourts *typically* look to state law when a federal claim 'deals with a familial relationship' . . ." Pl's Br. at 8 (quoting De Sylva v. Ballentine, 351 U.S. 570, 580 (1956)). However, De Sylva dealt not with

- 6 -

DEFENDANTS' RESPONSE TO PLAINTIFF'S OPENING BRIEF ON REMAND REGARDING MOTION TO DISMISS

1  a substantive due process claim, but rather a claim under the federal Copyright Act.
2  351 U.S. at 580-81.  The Court held that, although "[t]he scope of a federal right is,
3  of course, a federal question," courts can look to state law in interpreting a federal
4  statute that deals with domestic relations.  Id.  Interpreting the Constitution, as
5  opposed to federal statute, is an entirely different matter.  The Supreme Court and
6  Ninth Circuit are clear: identifying an unenumerated right under the Due Process
7  Clause requires the two-step inquiry set forth in Glucksberg.  Dobbs v. Jackson
8  Women's Health Org., 597 U.S. 215, 235-40 (2022).  As shown below, plaintiff
9  cannot satisfy Glucksberg.

        C.    **Under *Glucksberg*, Plaintiff Cannot Demonstrate A Substantive Due Process Right To Companionship With Decedent.**

      Plaintiff, not incorrectly, asserts that one of "[t]he 'oldest of the fundamental liberty interests' is the parental interest in the 'care, custody, and control of their children." Pl's Br. at 10 (quoting Troxel v. Granville, 530 U.S. 57, 65-66 (2000)). And defendants agree that such parental interests are "deeply rooted in the Nation's history and tradition." Pl's Br. at 10.  However, under Glucksberg, plaintiff fails to justify extending such fundamental deeply rooted parental rights to a "father figure" who had no biological or legal connection with plaintiff.

      First, plaintiff's "careful description" of the asserted fundamental right – i.e., "a child's right to have his father exercise care custody, and control over his upbringing" (Pl's Br. at 10) – is unavailing.  As this Court previously held, because plaintiff and Thomas had no biological or legal connection, their relationship does not fall within the "types of parent-child relationships entitled to substantive due process protection." Dkt. No. 38 at 3.  Rather, plaintiff seeks to "break[] new ground in the area of unenumerated fundamental rights" (Regino, 133 F.4th at 960) and expand the scope of due process to afford him the right to companionship with a "father figure" with whom he had no biological or legal relationship.

      Second, plaintiff fails to demonstrate that the right to companionship under

- 7 -

such circumstances is "deeply rooted" in the Nation's history.  As discussed in defendants' Supplemental Brief, common law and historical precedent have largely recognized parental rights and obligations of parents with their biological children.  <u>See</u> <u>generally</u> Defs' Br. at 6-14.  And, as this Court previously noted, "neither the Supreme Court nor the Ninth Circuit has found that a relationship lacking a legal or biological connection – like that of Plaintiff and Thomas – is sufficient to support a substantive due process claim . . ."  Dkt. No. 38 at 3.

Citing the Supreme Court's holding in <u>Lehr v. Robertson</u>, plaintiff argues that due process does not "require biological parenthood or adoption – merely 'a recognized family unit' reflecting a 'commitment to the responsibilities of parenthood.'"  Pls' Br. at 11 (quoting <u>Lehr v. Robertson</u>, 463 U.S. 248, 258, 261 (1983)).  But rather than downplaying the importance of blood relations, <u>Lehr</u> reinforces its relevance.  <u>See</u> <u>Lehr</u>, 463 U.S. 262 ("[t]he significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring."); <u>see</u> <u>also</u> <u>Wheeler v. City of Santa Clara</u>, 894 F.3d 1046, 1058 (9th Cir. 2018) ("Few close relationships—even between blood relatives—can serve as a basis for asserting Fourteenth Amendment loss of companionship claims.").

Lacking case law support, plaintiff relies heavily on a couple of historical "holding-out" laws where a father can "hold out" a child as their own, including California Civil Code section 230 and similar provisions from the mid-to-late 1800s.  Pl's Br. at 12-14.  Plaintiff also cites a mere seven (out of roughly forty-seven) other states and territories as of 1868 that adopted laws comparable to California's.  <u>Id.</u> at 14.  However, these provisions were inheritance laws that created mechanisms for children born out of wedlock to be legitimized by their biological parents, namely their biological fathers.

For example, Section 230 "provides that a child is legitimated for all purposes when ***the father*** publicly acknowledges his parentage, receives the child

- 8 -

into his family with the consent of his wife, if married, and otherwise treats the child as if it were legitimate." In re Lund's Est., 26 Cal. 2d 472, 497 (1945) (emphasis added). As of that time, "the father" meant the child's biological father. See id. at 496 (in analyzing Section 230: "[t]he biological relationship of father and son, and the de facto family relationship which the father had established, are not transient or volatile things . . .").

These laws were to "wash away forever the stain of bastardy" (In re Wilson's Est., 164 Cal. App. 2d 385, 389 (1958)) and ameliorate harsh common law rules applied to illegitimate children. "Under the common law an illegitimate child was held to be filius nullius or filius populi, it was without right even to the name of its natural father, and being without inheritable blood it could acquire nothing except by its own efforts." Pfeifer v. Wright, 41 F.2d 464, 465 (10th Cir. 1930). The common law rules, which had an "attachment to bloodlines" and "emphasi[zed] blood connection[s]," placed significant burdens on the State regarding the care and maintenance of such children. Mary Ann Mason, From Father's Property to Children's Rights: The History of Child Custody in the United States at pp. 25, 73 (1994). "From an early day the states began to regard and deal with this unfortunate condition in a more humane and just way." Pfeifer, 41 F.2d at 465. Still, such inheritance laws "did not bring illegitimate children into parity with legitimate children." Trimble v. Gordon, 430 U.S. 762, 768 (1977).

It was not until the states created laws of adoption that American law "diverted sharply from its common law origins and eventually allowed [illegitimate and non-biological] children, through an appropriate legal procedure, to gain all the rights that they would have gained if born into [a] family." See Mason, supra, at p. 73 (explaining that adoption laws, "[l]ed by Massachusetts's landmark adoption law of 1851," prompted a "new definition of family, based not on blood but on child nurture."); accord Naomi Cahn, Perfect Substitutes or the Real Thing?, 52 Duke L.J. 1077, 1103 (2003) (Massachusetts's 1851 adoption law

- 9 -

DEFENDANTS' RESPONSE TO PLAINTIFF'S OPENING BRIEF ON
REMAND REGARDING MOTION TO DISMISS

is claimed to "have made adoptive families equivalent to biological families").

Plaintiff attempts to shift the burden to defendants to "identify sufficient justification" for "excluding" plaintiff from a right to companionship with Thomas. Pl's Br. at 12 (quoting Obergefell v. Hodges, 576 U.S. 644, 671 (2015)). But, unlike the plaintiffs in Obergefell, Thomas was not excluded from trying to attain protected status – he could have formalized his relationship, such as through adoption, marriage, guardianship, or seeking to be deemed a presumed parent. Regardless, defendants have provided overwhelming evidence that due process does not encompass the relationship between Love and Thomas.

In such circumstances, the Court should heed warnings to "exercise the utmost care" before creating new rights. Regino, 133 F.4th at 960 (quotations omitted). The consequences of plaintiff's arguments are not limited to the facts of this case and would be far-reaching. Parents in non-marital relationships would be significantly impacted. According to plaintiff, "[o]nce Mr. Thomas received Mr. Love into his home and held him out as his own," Thomas obtained full "parental rights[,] including the right to equal custody." Pl's Br. at 9. The rights Thomas purportedly obtained ostensibly came at the expense of the biological mother's rights, without indication that she intended to abdicate her full parental rights.

Absent prior precedent or overwhelming historical basis, there simply is insufficient basis for the Court to wade into this "treacherous field" where "guideposts for responsible decision-making in this unchartered area are scarce and open-ended," and expand substantive due process rights. Regino, 133 F.4th at 960.

### III. CONCLUSION

Respectfully, defendants' motion should be granted without leave to amend.

DATED: August 18, 2025                    CARPENTER, ROTHANS & DUMONT

By:   /s/ Scott J. Carpenter
STEVEN J. ROTHANS
SCOTT J. CARPENTER
Attorneys for Defendants

- 10 -

DEFENDANTS' RESPONSE TO PLAINTIFF'S OPENING BRIEF ON
REMAND REGARDING MOTION TO DISMISS

## CERTIFICATE OF COMPLIANCE

Per Local Rule 11-6.2, the undersigned, counsel of record for defendants, certifies that this brief contains 3,289 words, which complies with the word limit of Local Rule 11-6.1.

DATED: August 18, 2025              CARPENTER, ROTHANS & DUMONT LLP

*/s/ Scott J. Carpenter*
By: _____
STEVEN J. ROTHANS
SCOTT J. CARPENTER
Attorneys for Defendants