UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6557 PA (SPx) | | Date | September 16, 2025 |
|---|---|---|---|---|
| Title | Shane Love v. Pasadena Police Officers: Aaron Villacana, et al. | | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |
|---|---|

| Kamilla Sali-Suleyman | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is a Motion to Dismiss First Amended Complaint ("Motion") filed by defendants City of Pasadena, Chief Phillip Sanchez, and Officers Aaron Villicana, Robert Griffith, Michael Orosco, Thomas Butler, Phillip Poirier, and Raphael Santiago (the "Officer Defendants") (collectively, "Defendants"). (Docket No. 34.) The Motion is fully briefed (See Docket Nos. 35–36, 50–53.) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing calendared for September 8, 2025, was vacated, and the matter taken off calendar.

**I.      Background**

**A.      Factual Allegations**

This action arises out of the death of Reginald Thomas ("Thomas"). According to the operative First Amended Complaint, Plaintiff Shane Love's ("Plaintiff") biological father passed away when he was about seven months old. (See Docket No. 33 ("FAC") ¶ 22.) Plaintiff began living with Thomas, who was the partner of Plaintiff's mother, when Plaintiff was one year old. (See id.) Plaintiff alleges that even though Thomas was not his biological or adoptive father, Thomas treated him as if he were his own son, taking him to school and doctors' appointments, giving him advice, and supporting him financially. (See id. ¶¶ 23–29.)

On the night of September 30, 2016, Thomas experienced a mental health episode. (See id. ¶ 31.) Plaintiff called 911, seeking help for Thomas. (See id. ¶¶32–34.) Pasadena police officers were sent to Thomas' home, and when they arrived, Thomas was standing outside his home armed with a fire extinguisher and a knife. (See id. ¶¶ 35–36.) A struggle ensued with the officers and Thomas died. (See id. ¶¶ 36–43.) Plaintiff was 15-years-old when this incident took place. (See id. ¶ 4.) Plaintiff alleges that he had a constitutionally protected "liberty interest in [Thomas'] companionship and society," (Id. ¶ 76) and that the Officer Defendants' actions deprived him of this liberty interest and violated his rights under the Due Process Clause of the Fourteenth Amendment.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6557 PA (SPx) | Date | September 16, 2025 |
|---|---|---|---|
| Title | Shane Love v. Pasadena Police Officers: Aaron Villacana, et al. | | |

### B.   Procedural History

Prior to filing this action, Plaintiff brought the same claim against Defendants in another action. See Terry v. City of Pasadena California, No. CV 18-07730 SJO (RAOx), 2019 WL 4139257 (C.D. Cal. June 17, 2019). On June 17, 2019, the district court dismissed Plaintiff's claims for lack of standing because Plaintiff could not allege a "custodial, biological, or legal relationship" to Thomas. Id., 2019 WL 4139257, at *6. Plaintiff subsequently filed this action in the Los Angeles County Superior Court. Defendants removed the action to this Court and filed a motion to dismiss on the basis that the claim was barred by issue preclusion. The Court granted Defendants' motion and dismissed the action. (Docket Nos. 17–18.) On appeal, the Ninth Circuit held that Defendants had waived issue preclusion by removing the refiled case to federal court. The Circuit vacated the dismissal and remanded the action to this Court to determine in the first instance whether Plaintiff had a constitutionally protected liberty interest in his relationship with Thomas. (Docket No. 23.)

Following remand, Plaintiff filed his FAC on September 25, 2023. On October 16, Defendants filed a motion to dismiss the FAC because Plaintiff could not allege the existence of a constitutionally protected relationship with Thomas. On November 27, 2023, the Court granted Defendant's motion and dismissed the FAC without leave to amend and with prejudice. (Docket Nos. 38–39.) Plaintiff appealed, and on May 14, 2025, the Ninth Circuit vacated the dismissal and remanded the action. In its order, the Ninth Circuit explained:

> Recently, in Regino v. Staley, we reiterated that when determining whether a right is cognizable to state a substantive due process claim, a district court must begin with a "'careful description' of the asserted fundamental liberty interest." 133 F.4th 951, 960 (9th Cir. 2025), quoting Washington v. Glucksberg, 521 U.S. 702, 720–21 (1997). The district court must then decide whether an asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it was] sacrificed." Id., quoting Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021). Here, as in Regino, and without its guidance, the district court did not undertake such an analysis. Accordingly, we vacate and remand for the district court to apply the Glucksberg analysis consistent with Regino.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6557 PA (SPx) | Date | September 16, 2025 |
|---|---|---|---|
| Title | Shane Love v. Pasadena Police Officers: Aaron Villacana, et al. | | |

(Docket No. 43.) After the Ninth Circuit issued its Mandate on June 5, 2025, the Court ordered the parties to file a Joint Status Report setting forth their proposed procedure and schedule for resolving the legal issues that have been remanded to this Court. (Docket No. 45.) The Court then adopted the parties' proposal and ordered supplemental briefing to facilitate further ruling on Defendant's Motion to Dismiss. (Docket No. 47.)

**II.     Legal Standard**

For purposes of a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiffs in federal court are generally required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). See, e.g., Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 248–49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of [a] claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6557 PA (SPx) | Date | September 16, 2025 |
|---|---|---|---|
| Title | Shane Love v. Pasadena Police Officers: Aaron Villacana, et al. | | |

than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

### III.   Discussion

####    A.   Applicable Law

The Fourteenth Amendment's Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.. This clause " 'protects individuals against two types of government action': violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (quoting United States v. Salerno, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)).  "Substantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959–60l; see also Reno v. Flores, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (explaining that governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest").

The Supreme Court has cautioned courts to "exercise the utmost care" before "break[ing] new ground" in the area of unenumerated fundamental rights. Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).  "[N]ew fundamental rights ordinarily 'must be defined in a most circumscribed manner, with central reference to specific historical practices.'" Khachatryan v. Blinken, 4 F.4th 841, 856 (9th Cir. 2021) (quoting Obergefell v. Hodges, 576 U.S. 644, 671, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015)).  To assess whether there has been a violation of a fundamental right, courts must follow the "established method" of substantive due process analysis set forth in Glucksberg. Regino, 133 F.4th at 964 (quoting Glucksberg, 521 U.S. at 720).  First, the Court must begin with a "'careful description' of the asserted fundamental liberty interest." Id. at 960 (quoting Glucksberg, 521 U.S. at 721).  Then, after formulating the asserted liberty interest, the Court must decide whether that asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it was] sacrificed." Id. (quoting Khachatryan, 4 F.4th at 858).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6557 PA (SPx) | Date | September 16, 2025 |
|---|---|---|---|
| Title | Shane Love v. Pasadena Police Officers: Aaron Villacana, et al. | | |

**B.  Analysis**

  1.  Asserted Liberty Interest

The parties dispute whether Plaintiff's relationship with Thomas is entitled to due process protection under the Fourteenth Amendment.  Applying Glucksberg, the Court begins with a careful description of Plaintiff's asserted liberty interest.

The FAC alleges that Plaintiff had a "liberty interest in [Thomas's] companionship and society."  (FAC ¶ 76.)  The FAC asserts that Thomas was Plaintiff's "presumed parent" under § 7611(d) of the California Family Code, which states that a person "is presumed to be the natural parent of a child if the . . . presumed parent receives the child into their home and openly holds out the child as their natural child."  (See id. ¶ 77.)  However, Plaintiff also alleges that Thomas "was not [Plaintiff's] biological father" (Id. ¶ 2), and he concedes that Thomas "never formally adopted him" (Docket No. 35 at p. 10).  Thus, defining Plaintiff's asserted right in the "most circumscribed manner," Khachatryan, 4 F.4th at 856, the Court defines Plaintiff's asserted liberty interest as follows: a child's right to companionship and society with a father-figure who has received the child into his home and held the child out as his own but who is neither the biological father nor the legal custodian of the child.

  2.  Whether Asserted Liberty Interest Is Rooted in History and Tradition

Under the second part of the Glucksberg analysis, the Court examines our Nation's "history, legal traditions, and practices" to determine whether Plaintiff's asserted right "has any place" among them.  Glucksberg, 521 U.S. at 721, 723.  Defendants argue that neither historical practices nor case law support Plaintiff's claimed right to companionship with Thomas.

As a starting point, the interest of parents in the care, custody, and control of their children is "perhaps the oldest of the fundamental liberty interests recognized" by the Supreme Court.  Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); see also Smith v. Org. of Foster Fams. For Equal. & Reform, 431 U.S. 816, 842, 97 S. Ct. 2094, 2108, 53 L. Ed. 2d 14 (1977) ("It is, of course, true that 'freedom of personal choice in matters of . . . family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment.'" (quoting Cleveland Board of Education v. LaFleur, 414 U.S. 632, 639-640, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974))).  While historically this liberty interest was discussed solely with respect to parents, the Ninth Circuit has held that the "constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents."  Smith v. City of Fontana, 818 F.2d 1411, 1418 (9th Cir. 1987) overruled on other grounds by Hodgers-Durgin v. de la Vina, 199

Case 2:20-cv-06557-PA-SP   Document 55   Filed 09/16/25   Page 6 of 10   Page ID #:554

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6557 PA (SPx) | Date | September 16, 2025 |
|---|---|---|---|
| Title | Shane Love v. Pasadena Police Officers: Aaron Villacana, et al. | | |

F.3d 1037 (9th Cir. 1999); see also Wheeler v. City of Santa Clara, 894 F.3d 1046, 1058 (9th Cir. 2018) ("[C]hildren's Fourteenth Amendment rights to companionship with their parents have been interpreted as reciprocal to their parents' rights.").[1/]

The Supreme Court has acknowledged that "biological relationships are not [the] exclusive determination of the existence of a family," and noted that "[a]doption, for example, is recognized as the legal equivalent of biological parenthood." Smith v. Organization of Foster Families for Equality and Reform ("OFFER"), 431 U.S. 816, 843–44 & n.51, 97 S.Ct. 2094, 53 L.Ed. 2d 14 (1977); see also Spielman v. Hildebrand, 873 F.2d 1377, 1384 (10th Cir. 1989) (explaining that "adoptive parents . . . like natural parents, have a protected liberty interest in their familial relationships with their children"). The Supreme Court has also recognized that a parent's right to custody, care, and nurture of a child may extend beyond the natural parent to the child's legal custodian. See OFFER, 431 U.S. at 843 n.49 (citing Prince v. Massachusetts, 321 U.S. 158, 159, 64 S. Ct. 438, 439, 88 L. Ed. 645 (1944)).

However, the Fourteenth Amendment's substantive due process protections have not been extended to every type of parent-child relationship. In particular, neither the Supreme Court nor the Ninth Circuit have extended this right to individuals who do not have the "full authority of a legal custodian," such as foster parents or "de facto" parents. See id. at 827, 845–47 (describing "important distinctions" between a foster family and a natural family and declining to resolve questions regarding foster parents' protected liberty interest in custody of foster children); see also Huk v. County of Santa Barbara, 650 F. App'x 365, 366–67 (9th Cir. 2016) (concluding that foster parents could not demonstrate that custody of foster child was a liberty interest protected by Due Process Clause); Backlund v. Barnhart, 778 F.2d 1386, 1389 (9th Cir. 1985) ("[F]oster parents do not enjoy the same constitutional protections that natural parents do."); Miller v. California, 355 F.3d 1172, 1175–76 (9th Cir. 2004) (concluding that non-custodial grandparents' status as "de facto" parents under California law did not create a liberty interest entitling them to visitation).

Here, in the absence of any authority recognizing substantive due process protections for the specific type of relationship alleged in this case, Plaintiff contends that because Thomas

---

[1/]   Recently, in Estate of Hernandez by & through Hernandez v. City of Los Angeles, several Ninth Circuit judges expressed doubt as to whether a child's right to his or her parent's companionship exists under Glucksberg. 139 F.4th 790, 814 (9th Cir. 2025). Absent binding authority indicating that such a right does not exist, however, the Court proceeds with the understanding that "children's Fourteenth Amendment rights to companionship with their parents [are] reciprocal to their parents' rights." Wheeler, 894 F.3d at 1058 (citing Smith, 818 F.2d at 1418–19).

Case 2:20-cv-06557-PA-SP   Document 55   Filed 09/16/25   Page 7 of 10   Page ID #:555

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6557 PA (SPx) | Date | September 16, 2025 |
|---|---|---|---|
| Title | Shane Love v. Pasadena Police Officers: Aaron Villacana, et al. | | |

would have been presumed Plaintiff's natural parent under California Family Code § 7611(d), their relationship should be afforded the same protection as would a relationship between a child and his natural parent or legal custodian.[2/]  Plaintiff compares this case to Obergefell and argues that Defendants bear the burden of showing a "sufficient justification" for excluding children like Plaintiff from the "comprehensive" fundamental right to be raised by their parents, including presumed parents like Thomas.  (Docket No. 50 at pp. 11–12 (quoting Obergefell, 576 U.S. at 671).)  The Court disagrees.

In Obergefell, the Supreme Court recognized an exception to Glucksberg's strict emphasis on historical tradition "with respect to the right to marry and the rights of gays and lesbians."  576 U.S. at 671.  The Court reasoned that the "right to marry is fundamental as a matter of history and tradition," that "[t]here is no difference between same- and opposite-sex couples with respect to this principle," but that "by virtue of their exclusion from that institution, same-sex couples [were] denied the constellation of benefits that the States have linked to marriage."  Id. at 670–71.  Here, unlike the plaintiffs in Obergefell, nothing in this case suggests that Thomas was excluded from seeking formal recognition as Plaintiff's father, whether through adoption, marriage, or any other legal avenue.  Accordingly, Glucksberg's general rule, rather than Obergefell's exception, governs here.  Cf. Khachatryan, 4 F.4th at 856 (concluding that Obergefell exception did not apply in case involving relationship between parent and adult child).

Here, Thomas' alleged presumptive parent status is based solely on California Family Code § 7611(d).  Thus, similar to a foster parent, Thomas' parental status "has its source in state law" rather than "having its origins entirely apart from the power of the State."  OFFER, 431 U.S. at 845.  To determine whether a relationship is protected by the Fourteenth Amendment, however, the Court must look to federal law rather than state law.  Backlund, 778 F.2d at 1389–90 ("True liberty rights do not flow from state laws, which can be repealed by action of the legislature . . . . The very fact that the relationship before us is a creature of state law . . . demonstrates that it is not a protected liberty interest, but an interest limited by the very laws which create it." (citation omitted)); see also OFFER, 431 U.S. at 845 ("[T]he liberty interest in family privacy has its source, and its contours are ordinarily to be sought, not in state law, but in intrinsic human rights, as they have been understood in 'this Nation's history and tradition.'" (footnote and citation omitted)).[3/]  Thus, Thomas' parental status derived exclusively from state

---

[2/]   As Defendants highlight, it is not alleged in this case that Thomas ever formally acquired presumed parent status through a court order or other means.  (See Docket No. 53 at p. 6.)

[3/]   Plaintiff asserts that "most substantive protections by the Due Process Clause are 'not created by the Constitution' but instead 'stem from an independent source such as state law.'"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-6557 PA (SPx) | Date | September 16, 2025 |
| Title | Shane Love v. Pasadena Police Officers: Aaron Villacana, et al. | | |

law does not suffice to show that the relationship between Plaintiff is Thomas is entitled to substantive due process protection.

Plaintiff also argues that because the Ninth Circuit has allowed parents to bring substantive due process claims "based on state-law custody or visitation rights," Plaintiff should also be permitted to assert a substantive due process claim based on his state law-derived relationship with Thomas. (Docket No. 50 at p. 8.) Plaintiff cites three cases in support of this argument: James v. Rowlands, 606 F.3d 646 (9th Cir. 2010); Brittain v. Hansen, 451 F.3d 982 (9th Cir. 2006); and Murguia v. Langdon, 61 F.4th 1096 (9th Cir. 2023), cert. denied sub nom. Tulare v. Murguia, 144 S. Ct. 553, 217 L. Ed. 2d 295 (2024). In each of these cases, however, the Ninth Circuit recognized a liberty interest stemming from a *biological* parent's fundamental right to the care, custody, and companionship of his or her children. See James, 606 F.3d at 655 (holding that substantive due process required officials to notify parent with shared legal custody of a transfer in his child's physical custody when the officials encouraged and facilitated that transfer); Brittain, 451 F.3d at 992 (holding that non-custodial parents with court-ordered visitation rights have a liberty interest in the companionship, care, custody, and management of their children); Murguia, 61 F.4th at 1119 (recognizing substantive due process right of father to be physically present with children over which he held joint custody). Because none of these cases recognize a liberty interest in a parent-child relationship derived solely from state law, Plaintiff's reliance on these cases is misplaced.

Finally, the parties dispute whether a relationship like the one between Plaintiff and Thomas is rooted in this country's early legal traditions and practices. Defendants argue that common law tradition regarding parent-child relationships revolved around parental rights (particularly fathers' rights) and duties as to biological children, citing the political writings of John Locke, William Blackstone, and James Kent. (Docket No. 51 at pp. 6–9.) Plaintiff argues that holding-out parentage laws like California Family Code § 7611(d) are rooted in American history and tradition, pointing to two California statutes from the 1870s and similar historical laws in other states. (Docket No. 50 at pp. 13–15; see 1870 Cal. Stat. ch. 385, § 9 at 531 (providing that illegitimate child may be deemed legitimate where either or both parents publicly acknowledge child as their own); Cal. Civ. Code § 230 (1872) (providing that illegitimate child

---

(Docket No. 51 at p. 8 (quoting Town of Castle Rock, Colorado v. Gonzales, 545 U.S. 748, 756, 125 S. Ct. 2796, 2803, 162 L. Ed. 2d 658 (2005).) In so arguing, Plaintiff conflates procedural due process, which can arise from state law, with substantive due process, which cannot. See Castle Rock, 545 U.S. at 756–57 (explaining that under procedural component of Due Process Clause, the "underlying substantive interest is created by an independent source such as state law," and that "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement" (citations and internal quotations omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6557 PA (SPx) | Date | September 16, 2025 |
|---|---|---|---|
| Title | Shane Love v. Pasadena Police Officers: Aaron Villacana, et al. | | |

may be deemed legitimate where a father publicly acknowledges child as his own, receives child as such into his family, or otherwise treats child as if it were a legitimate child). Plaintiff also points to the English common law marital presumption and argues that "[r]equiring proof of biological paternity would have been a radical departure from traditional parentage law, which by necessity didn't rely on biology." (Docket No. 50 at pp. 13–14.) As Defendants note, however, a review of the California holding-out laws on which Plaintiff relies suggests that these statutes pertained to a *biological* parent's legitimizing of his or her own child born out of wedlock. (See Docket No. 53 at pp. 8–9.) Indeed, both statutes appear in chapters describing both the means by which an adult may adopt a minor child and the means by which a parent may legitimize a child born out of wedlock, and both chapters consistently use the terms "parents" or "father" to refer to a child's biological parent or father. See, e.g., 1870 Cal. Stat. ch. 385, § 3 at 530 (providing that a "legitimate" child offspring cannot be adopted "without the consent of its parents"); Cal. Civ. Code § 224 (same); 1870 Cal. Stat. ch. 385, § 7 at 531 (providing that the "parents" of an adopted child are, "from the time of adoption, relieved of all parental duties"); Cal. Civ. Code § 229 (same); see also In re Lund's Est., 26 Cal. 2d 472, 496–97 (1945) (describing Cal. Civ. Code § 230 as relating to "[t]he biological relationship of father and son, and the de facto family relationship which the father had established"). While Plaintiff is correct that the means of establishing a biological relationship between a father and child were historically limited, the Court cannot conclude that California or any other state historically recognized a relationship like the one between Plaintiff and Thomas – where it was known that there was no biological relationship, where the father figure and mother were not married, and where the father figure did not adopt the child – as equivalent to a parent-child relationship.

In sum, absent a showing that Plaintiff's asserted liberty interest is rooted in the country's history and traditions, the Court cannot "break new ground" and expand the concept of substantive due process to encompass this right. See Collins, 503 U.S. at 125. Accordingly, the FAC fails to state a substantive due process claim under the Fourteenth Amendment.[4]

---

[4] Plaintiff also argues that regardless of whether he can allege a due process claim under Glucksberg, his claim can proceed because the FAC alleges behavior by government actors that "shocks the conscience." (Docket No. 50 at pp. 5–9; Docket No. 52 at p. 10.) The Court disagrees. "To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998). However, "merely showing such deprivation is not enough to prevail." Id. at 871 n.4, as there is "no general liberty interest in being free from capricious government action," Id. at 873. Rather, the plaintiff must allege deprivation of one of the "fundamental rights and liberties" that is "deeply rooted in this Nation's history and tradition." Glucksberg, 521 U.S. at 720–21. If this threshold is met, a plaintiff must also show that the alleged government deprivation rises to a level of culpability necessary to support a due process

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6557 PA (SPx) | Date | September 16, 2025 |
|---|---|---|---|
| Title | Shane Love v. Pasadena Police Officers: Aaron Villacana, et al. | | |

**Conclusion**

For all of the foregoing reasons, the Court grants Defendants' Motion to Dismiss. The Court additionally concludes that, because Plaintiff cannot allege a violation of a fundamental liberty interest, granting leave to amend would be futile. Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) ("Although a district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, [d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." (internal quotations and citations omitted).); see Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008). Accordingly, the Court dismisses Plaintiff's FAC without leave to amend and dismisses this action with prejudice. The Court will issue a Judgment consistent with this Order.

IT IS SO ORDERED.

---

claim; "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." County of Sacramento v. Lewis, 523 U.S. 833, 846, 118 S. Ct. 1708, 1716, 140 L. Ed. 2d 1043 (1998). It is not, as Plaintiff suggests, enough to allege conscience shocking action without alleging an underlying deprivation of a fundamental right. See Brittain, 451 F.3d at 991–92 ("[I]n order to establish a constitutional violation based on substantive due process, [a plaintiff] must show both a deprivation of [his] liberty and conscience shocking behavior by the government.").